IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | |
|---|---|
| CHRISTOPHER ALLEN THORNSBERRY<br>ADC #169180<br><br>Plaintiff,<br>v.<br><br>ROOSEVELT G. BARDEN,<br>Captain, East Arkansas Regional Unit, *et al.*<br><br>Captains. | *<br>*<br>*<br>*<br>*   No. 2:20-cv-00239-JJV<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Christopher Allen Thornsberry ("Plaintiff") is a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging that on October 5, 2020, Captain Roosevelt G. Barden issued false disciplinary charges against him in retaliation for Plaintiff reporting he was being sexually harassed by another prisoner. (Doc. 4.) All other claims and Defendants have been dismissed without prejudice. (Docs. 7, 18, 19.) Plaintiff brings these claims against Captain Barden in his official and personal capacities. (Doc. 4.) And he seeks monetary damages as well as injunctive relief. (*Id.*)

Captain Barden has filed a Motion for Summary Judgment arguing he is entitled to sovereign and qualified immunity. (Docs. 66-68.) Plaintiff has filed a Response. (Doc. 69.) After careful consideration and for the following reasons, the Motion is GRANTED, Plaintiff's retaliation claim against Captain Barden is DISMISSED with prejudice, and this case is CLOSED.

## II. SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. EVIDENCE

The Arkansas State Police maintain a PREA hotline for prisoners to report sexual harassment or abuse.[1] (Doc. 66-1 at 19-20.) During his deposition, Plaintiff said, "I make a lot of

---

[1] The Prison Rape Elimination Act ("PREA") "authorizes grant money and creates a commission to study" ways to reduce rape in prison. *Blevins v. Pearson*, No. 18-CV-2270, 2018 WL 6814183, 3 (D. Minn. Nov. 30, 2018). But it does not create a private right of action. *Id.*

reports on that hotline right there." (*Id*. at 20.)  And he demonstrated he had the phone number memorized. (*Id*.)  Plaintiff said Captain Barden "had a negative attitude towards people making PREA reports." (*Id*.)  And he claimed that, sometime prior to October 5, 2020, Captain Barden told Plaintiff and another inmate who were accusing each other of sexual harassment, "ain't neither one of you all going to call the PREA hotline because if you all keep on with this PREA stuff, I'm going to lock both of you all up." (*Id.* at 19.)

Plaintiff explained that on October 5, 2020, he was housed in solitary confinement in zone 2 of the max 4. (*Id.* at 11-16.)  Sometime that day, Plaintiff called his mother on a phone brought to his cell, told her inmate Hudman was sexually harassing him, and asked her to make a PREA report or call the Warden on his behalf. (*Id*.)  Plaintiff believes his mother then called the prison and spoke to Captain Barden. (*Id.* at 14-15.)  Plaintiff says "later on that day," Captain Barden came to his cell, made unspecified "derogatory remarks," told him to pack up his personal property because he was going to isolation, and left the barrack. (*Id*. at 11-12. )  While Captain Barden was gone, Plaintiff alleged called his family a second time. (*Id.*)  When Captain Barden returned, he supposedly unplugged the phone while Plaintiff was still using it, made more unexplained derogatory remarks, and escorted Plaintiff to isolation. (*Id*.)

In his declaration, Captain Barden provides a different version of events  (Doc. 66-3.) He says that around 1:00 p.m. on October 5, 2020, he received a phone call from Hudman's father reporting an unknown inmate was yelling threats and throwing objects at his son during a video visit earlier that day. (*Id*.) Captain Barden says he immediately went into the barrack and observed Plaintiff, who was sitting in his cell directly across from the video visitation area, verbally threatening Hudman. (*Id*.) Captain Barden allegedly told Plaintiff to pack his property for isolation, left the barrack, returned to find Plaintiff using the phone, unplugged it, escorted Plaintiff

3

to isolation, and wrote a major disciplinary against him for threatening Hudman. (*Id.*) Importantly, Captain Hudman does not recall speaking to Plaintiff's mother on October 5, 2020. (*Id.*) However, as previously mentioned, at summary judgment I must construe the dispute evidence in Plaintiff's favor. (*Id.*)

The parties agree that, later that day, Captain Barden issued a major disciplinary saying on October 5, 2020 at 1:11 p.m., he entered the barrack and heard Plaintiff verbally threatening to physically harm inmate Hudman. (Doc. 66-2, 66-3, 66-4, 66-5, 66-6). Based on those factual allegations, Captain Barden charged Plaintiff with: (1) creating unnecessary noise; (2) assault/verbal threat; (3) failure to obey an order; and (4) provoking a fight. (*Id.*) On October 8, 2020, Plaintiff attended a disciplinary hearing on those charges before a non-party hearing officer.[2] (*Id.*) After listening to Plaintiff's explanation and reviewing Captain Barden's report and disciplinary charges, the hearing officer found Plaintiff not guilty of the first two charges and not guilty of the remaining two.[3] (*Id.*) Those disciplinary convictions were later affirmed by ADC officials on

---

[2] In his Response to the Motion for Summary Judgment (Doc. 69 at 3), Plaintiff says the disciplinary hearing officer did not correctly follow ADC procedures when she conducted the hearing. (Doc. 69.) But for the reasons previously explained, Plaintiff did not have a right to procedural due process during his disciplinary hearing (Docs. 5, 7. 18, 19), and the Eighth Circuit affirmed that ruling during the interlocutory appeal. *Thornsberry v. Barden*, 854 F. App'x 105 (8th Cir. 2021). Plaintiff also believes the Eighth Circuit held he prevailed on his retaliation claim. (Doc. 69.) That is incorrect. The Eighth Circuit ruled the facts, as alleged by Plaintiff, stated a plausible or possible retaliation claim. *Thornsberry,* 854 F. App'x at 106. However, at summary judgment, the issue is whether Plaintiff has sufficient evidence to support his allegations, defeat qualified immunity, and proceed to trial. For the reasons explained in this Memorandum and Order, I conclude he does not.

[3] In her declaration, Disciplinary Hearing Officer Bannister says she found Plaintiff guilty of creating unnecessary noise and provoking a fight. (Doc. 66-5 at 2.) But the disciplinary decision says she found him guilty of unnecessary noise and assault/verbal threat. (Doc. 66-2 at 2). And in the conclusion of that decision, she wrote, "Inmate Thornsberry is a class IV inmate who must learn that creating unnecessary noise and threatening another inmate will not be tolerated." (*Id.* at 3.) Despite this inconsistency, it is undisputed she found him guilty of only two of the four charges.

appeal. (*Id*).

IV.    **DISCUSSION**

   A.    **Sovereign Immunity**

Captain Barden argues he is entitled to sovereign immunity from the official capacity claims. The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*; *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). Captain Barden is a state official. And the State of Arkansas has not waived its Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, he is entitled to sovereign immunity on Plaintiff's request for monetary damages against him in his official capacity. However, sovereign immunity does not preclude Plaintiff from obtaining: (1) monetary damages from Captain Barden in his personal capacity; or (2) injunctive relief. *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas,* 127 F.3d 750, 754 (8th Cir. 1997).

   B.    **Qualified Immunity**

Captain Barden argues he is entitled to qualified immunity from the personal capacity claims. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Captain Barden is entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional

right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dept.*, 987 F.3d 767, 770 (8th Cir. 2021). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019). I find Captain Barden is entitled to qualified immunity based on the first prong of the analysis.

"An inmate has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights," such as reporting sexual harassment. *Sanders v. Hobbs,* 773 F.3d 186, 190 (8th Cir. 2014). But a disciplinary conviction cannot be deemed retaliatory if it was issued for an actual violation of prison rules. *Id.*; *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). Stated differently, a retaliatory discipline claim fails, as a matter of law, if there is "some evidence the inmate actually committed a rule violation." *Id.* Importantly, a "report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Id.* And this rule applies even if the report is written by the correctional officer who is alleged to have engaged in the retaliatory conduct. *Id.*; *see also Bandy-Bey v. Crist*, 578 F.3d 763, 765-66 (8th Cir. 2009). In other words, a disciplinary decision made by an impartial decision maker and supported by some evidence "essentially checkmates" a retaliation claim. *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *see also Sanders*, 773 F.3d at 190.

It is undisputed an impartial decision maker conducted a hearing, reviewed Captain Barden's report, listened to Plaintiff's statement, and, after weighing that conflicting evidence,

found Plaintiff guilty of two of the four charges, *i.e.* creating unnecessary noise and verbally assaulting or provoking Hudman.  The issue here is whether that partial finding of guilt still "checkmates" or bars Plaintiff's retaliation claim.  I could not find any Eighth Circuit cases addressing that issue.[4]  However, I believe the answer should be yes for the following reason.  A hearing officer, with no alleged motive to retaliate against Plaintiff, found Captain Barden's factual report that Plaintiff was yelling and threatening Hudman to be <u>true</u>.  The hearing officer did not conclude those facts supported all four of the charged rule violations.  But the bottom line is that she found Captain Barden's version of events of what happened on October 5, 2022 to be true.  That finding checkmates or bars Plaintiff's claim that Captain Barden issued <u>false</u> disciplinary charges against him for retaliatory or improper reasons.  As previously mentioned, a disciplinary conviction cannot be deemed retaliatory if it was issued for an actual violation of prison rules.  *Hartsfield,* 511 F.3d at 829; *see also Henderson,* 29 F.3d at 469 ("no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform").  Accordingly, I conclude Captain Barden is entitled to qualified immunity from Plaintiff's request for monetary damages against him in his personal capacity.

    **C.**    **Injunctive Relief**

Because Plaintiff's retaliation claim fails as a matter of law, he is also unable to obtain any injunctive relief.

---

[4] The Second Circuit has recognized a retaliation claim is foreclosed if "there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conducted charged in the misbehavior report." *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002).  But the Second Circuit applies a burden-shifting analysis to prisoner retaliation claims that is different from the three-part test used by the Eighth Circuit.  And opinions from other Circuits are not binding precedent.

## V. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Captain Barden's Motion for Summary Judgment (Doc. 66) is GRANTED, Plaintiff's retaliation claim against Captain Barden is DISMISSED with prejudice, and this case is CLOSED.

2. It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order and the accompanying Judgment would not be taken in good faith.

DATED this 21st day of September 2022.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE